## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

IVEN CORNELIUS CRUSE,

     Plaintiff,

     v.                                                                     Civil Action No. SAG-22-0521

BRIAN FROSH, *et al.*,

     Defendants.

## MEMORANDUM OPINION

Plaintiff Iven Cornelius Cruse (also known as "Iven Cruz"), who is presently incarcerated at Eastern Correctional Institution ("ECI"),  filed this civil action pursuant to 42 U.S.C. § 1983 against former Maryland Attorney General Brian Frosh, Jessup Correctional Institution ("JCI") Warden Bettie Harris, JCI Officers Collins Sanni, Isaac Asuelimen, Babatunde Abidogun, Alain Choutedjem, and Department of Public Safety and Correctional Services ("DPSCS") Commissioner Wayne Hill (collectively, the "Correctional Defendants"). ECF No. 1. In the Complaint, Cruse claims that the JCI officers used excessive force against him.[1]  *Id.* at 2-3.  Cruse seeks injunctive relief and monetary damages. *Id.* at 3.

The Correctional Defendants filed a Motion to Dismiss or, Alternatively, for Summary Judgment on October 4, 2022, arguing in pertinent part that Cruse failed to exhaust administrative remedies.  ECF No. 36.  Cruse then filed a "Motion to Receive Discovery on All Defendants" (ECF No. 39), which he later supplemented (ECF Nos. 40, 43).  Cruse also opposed the Correctional Defendants' motion. ECF Nos. 41, 42, 48.  The Court denied the Correctional

---

[1] Cruse also brought suit against Emmanuel Esianor, alleging that he denied Cruse medical care in violation of the Eighth Amendment to the United States Constitution.  ECF No. 2-3.  The Court granted summary judgment in favor of Esianor on March 21, 2023.  ECF Nos. 49, 50.

Defendants' motion without prejudice and directed the Correctional Defendants to respond to Cruse's Motion for Discovery and to file a responsive pleading addressing the substance of Cruse's excessive force claim.  ECF Nos. 49, 50.

On April 18, 2023, the Correctional Defendants answered Cruse's Complaint, and stated that the parties were undergoing discovery.  ECF No. 51.  As such, the Court denied Cruse's Motion for Discovery as moot, and directed the parties to file a status report informing the Court of the progress on discovery.  ECF No. 52.  Thereafter, the Correctional Defendants renewed their Motion to Dismiss, or in the Alternative, for Summary Judgment.  ECF No. 56.  Cruse was notified of his right to respond to the Correctional Defendants' renewed Motion pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), and he did so on October 12, 2023.  ECF Nos. 57, 60. Additionally, Cruse filed a Motion to Appoint Counsel and a Motion "requesting witnesses be entered on the docket."  ECF Nos. 61, 64.

The Court has reviewed the pleadings and finds a hearing unnecessary.  *See* Loc. R. 105.6 (D. Md. 2023).  For the reasons stated below, the Correctional Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgement, is granted in part, and Defendants Frosh, Hill, and Harris are dismissed from this action.  The Motion is denied as to Defendants Collins Sanni, Isaac Asuelimen, Babatunde Abidogun, Alain Choutedjem.  Cruse's Motion for Appointment of Counsel (ECF No. 61) will be granted, and his additional motion (ECF No. 64) will be denied without prejudice.

## I.    BACKGROUND

The Court summarized Cruse's allegations in its Memorandum Opinion on March 21, 2023, but reiterates them here, for clarity:

> Cruse claims that on September 23, 2021, while he was incarcerated at JCI, he was in line to receive his medication when Officer Abidogun directed him to

2

turn around and leave. Compl., ECF No. 1 at 2. Cruse found himself surrounded by Officers Sanni, Choutedjem, and Asuelimen when Officer Abidogun handcuffed him and accused him of "swallowing something." *Id.* The officers then forced Cruse to go to the "compound shack" where they "beat" him while he was handcuffed. *Id.* Officer Choutedjem kneed Cruse in the chest, and Officer Sanni slapped him in the face and tried to break his left thumb, while Officers Asuelimen and Abidogun held him down. *Id.* at 2-3.

Cruse alleges that following the incident, Defendant Esianor denied him medical visits, "claiming there's nothing he could do" and that Cruse would "just have to heal." ECF No. 1-1 at 1. At the time he filed the instant Complaint, Cruse still suffered pain in his hand, wrists, left thumb, and chest. *Id.* at 2.

The Correctional Defendants have moved to dismiss Cruse's Complaint, or in the alternative, for summary judgment in their favor.  ECF No. 56-1.  In support thereof, they argue Cruse has not stated a claim against Defendants Brian Frosh, Wayne Hill, and Bettie Harris because Cruse has not alleged any personal involvement by these Defendants in the incident, nor has he pled facts supporting supervisory liability.  *Id.* at 13-14.  Further, they argue that, to the extent Cruse sued the Correctional Defendants in their official capacities, the suit must be dismissed, and that the Correctional Defendants are entitled to qualified immunity.  *Id.* at 14-16.

Additionally, they argue Cruse has failed to state a colorable claim against Defendants Collins Sanni, Isaac Asuelimen, Babatunde Abidogun, and Alain Choutedjem. They explain that Cruse pursued a grievance with the Inmate Grievance Office ("IGO") regarding this incident, and the IGO referred the matter to the Office of Administrative Hearings ("OAH") for resolution.  ECF No. 56-1 at 5.  The Correctional Defendants include a copy of the decision of Administrative Law Judge ("ALJ") M. Teresa Garland following a hearing held on March 29, 2023 via video conference.  ECF No. 56-3.

By a preponderance of the evidence presented, ALJ Garland found the following facts.  On September 23, 2021, Cruse left his housing unit and crossed the "yard" in order to get to the multi-purpose building to get medication.  *Id*. at 5.  Officer Abidogun was on the yard and gave Cruse a

direct order to return to his housing unit, which Cruse ignored. *Id.* Sergeant Sanni gave Cruse a similar order, which was also ignored. *Id.* Officer Abidogun observed a piece of paper in Cruse's hand, which Cruse attempted to pass to another inmate. *Id.* As a result, Cruse was placed in handcuffs and taken to "the shack" to be searched. *Id.* There are no cameras in or around the shack. *Id.* While inside the shack, Cruse was strip-searched, but contraband was not found. *Id.* He was then released to his housing unit. *Id.* Cruse alleges that his injuries at the hands of correctional officers occurred inside the shack. *Id.* at 6. Cruse did not seek medical attention until September 25, 2021, and at that time he noted he had been beaten in the shack. *Id.* He had swelling in his left hand and bruising on both wrists, but an x-ray did not reveal fractures. *Id.* He did not report injury to any other part of his body. *Id.*

In reaching her decision, ALJ Garland discussed the evidence presented. *Id.* at 7. She notes that on September 25, 2021, Officer Abidogun and Sergeant Sanni wrote Matters of Record regarding this incident which describe Cruse "failing to obey" orders and "attempting to pass a white paper, presumably containing contraband to another inmate." *Id.* at 7-8. Both statements indicated Cruse was taken to the shack to be searched but denied assaulting him. *Id.* at 8. The officers were interviewed by the Internal Investigations Division ("IID") on April 13, 2022, and "[t]heir statements were consistent with their written Matters of Record." *Id.* Segeant Asuelimen and Officer Adejumo were also interviewed by the IID investigator. *Id.* Sergeant Asuelimen "observed an officer telling [Cruse] to place his hands behind his back" and he told Cruse to "follow the order of Officer Abidogun." *Id.* Sergeant Asuelimen entered the shack, but left prior to the search because Cruse "had complied with being handcuffed." *Id.* Officer Adejumo indicated that he was on the compound on the date and time at issue, but had no contact with Cruse. Officer Choutedjem observed Cruse failing to follow a direct order, and assisted Sergeant Sanni

and Officer Abidogun with escorting Cruse to the shack.  *Id.*  Officer Choutedjem did not remain in the shack and returned to his other duties but did observe Cruse exit the shack and walk past him.  *Id.*  Officer Choutedjem did not note any bruising, limping, or other indicia of distress.  *Id.*

The ALJ recounts that there is no video surveillance surrounding or inside the shack, but Captain Towanda Brown reviewed available video footage.  *Id.* at 9.  Brown's "description of the events which occurred in the compound were consistent with the verbal and written descriptions provided by the correctional officers against whom the allegations of assault were made."  *Id.*  ALJ Garland concluded that "[b]ased upon the record before" her, she could not "find by a preponderance of the evidence that any of the officers alleged to have assaulted the Grievant took any action that was arbitrary or capricious, or inconsistent with the law."  *Id.*  Cruse was informed of his right to seek judicial review of ALJ Garland's decision in the Circuit Court (*id.* at 10), but according to the Correctional Defendants' review of Maryland Judiciary Case Search, Cruse failed to further appeal this matter.  ECF No. 56-4, ECF No. 56-1 at 11-12.  Notably, the Correctional Defendants failed to provide any copies of the evidence relied upon by ALJ Garland.

Cruse opposed the Correctional Defendants' Motion.  ECF No. 60.  The opposition contains an affidavit from Cruse attesting to the veracity of the information provided therein.  ECF No. 60-1 at 8.  In opposition, Cruse argues that summary judgment is inappropriate because material facts remain in dispute.  ECF No. 60-1.  Specifically, he notes that since filing his Complaint he has "obtained the entire sixty-eight-page IID report."[2]  *Id.* at 3.  Cruse highlights several inconsistencies between his account of the events which occurred and the officers' recollections.  He also points to conflicting statements at various points in the IID report.  *Id.*

---

[2] Although Cruse indicates that he included the entire report with his opposition response (*see* ECF 60-1 at 3), only portions of it are provided.  ECF Nos. 60-3, 60-4.  Cruse also includes a document titled "Additional Information for Opposition to Defendants Response to Their Motions."  ECF No. 60-2.

Specifically, page 6 of the IID report states "Officer Abidogun advised Sgt. Sanni that he observed the inmate collecting contraband." *Id.*, *see also* ECF No. 60-3 at 6. However, in his matter of record, Sanni does not include that detail (ECF No. 60-4 at 4-5), and instead the IID report reflects that Sanni told Cruse to comply with the order because he "was observed trying to give an unknown substance to another inmate." ECF No. 60-3 at 5. Cruse also points out that no contraband was found throughout the incident. ECF No. 60-1 at 3, ECF No. 60-3 at 5. Cruse concludes that there are "questions as to what degree of force was exerted upon Mr. Cruse and whether it was justified in light of any resistance by Mr. Cruse. Because Defendants and Mr. Cruse's accounts are contradictory…the issue of what occurred in the shack must be determined by the fact-finder." ECF No. 60-1 at 3-4. Cruse reiterates his argument that the Correctional Defendants utilized excessive force against him and argues that they are not entitled to qualified immunity. *Id.* at 4-8.

## II.    STANDARD OF REVIEW

In reviewing the Complaint in light of a Motion to Dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6) the Court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States*, 120 F.3d 472, 473 (4th Cir. 1997). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

The Supreme Court of the United States explained a "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Id.* at 555. Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in [his] favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 645 (4th Cir. 2002). Importantly, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

While self-represented pleadings are liberally construed, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), this Court maintains an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed. R. Civ. P. 56(e)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 249-50.

## III.   DISCUSSION

### A.  Defendants Frosh, Hill, and Harris

Title 42 U.S.C. § 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable." Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See West v. Atkins,* 487 U.S. 42, 48 (1988).

In a suit arising under 42 U.S.C. § 1983, the doctrine of respondeat superior generally does not apply and liability attaches only upon a defendant's personal participation in the constitutional violation. *See Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985); *see also Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). A supervisory official cannot be held liable for the acts of a

subordinate unless the supervisor's "indifference or tacit authorization of subordinates' misconduct" can be deemed to have caused the injury to the plaintiff. *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). For a supervisor to be found liable for such acts, a plaintiff must prove that (1) the supervisor had actual or constructive knowledge that the subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to individuals like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the subordinate's misconduct; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Id.* (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

Although Defendants Frosh, Hill, and Harris are named in the caption of the complaint, Cruse pleads no facts which substantiate their personal involvement in the alleged use of excessive force by the JCI officers, nor does Cruse plead facts which would substantiate supervisory liability. ECF No. 1. Simply put, even liberally construed, no set of facts in the complaint give rise to § 1983 liability against Frosh, Hill, and Harris. Thus, the Correctional Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment, construed as a Motion to Dismiss, is granted in part, and Defendants Frosh, Hill, and Harris are dismissed from this action.

### B. Defendants Sanni, Asuelimen, Abidogun, and Choutedjem

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. This prohibition "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). The Eighth Amendment is violated when an inmate is subjected to "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173

9

(1976)).  To establish an Eighth Amendment violation, an inmate must establish both that the prison official subjectively "acted with a sufficiently culpable state of mind" and that the injury or deprivation inflicted was objectively serious enough to constitute a violation.  *Williams*, 77 F.3d at 761.  On the subjective element, an inmate must show that the guards used force "maliciously or sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline."  *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)).  In assessing this element, a court should consider "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat;" and "(4) any efforts made to temper the severity of a forceful response."  *Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008) (quoting *Whitley*, 475 U.S. at 321).

As for the objective level of harm, a party asserting an Eighth Amendment excessive force claim must demonstrate that the officer used a "nontrivial" amount of force.  *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010).  "[N]ot every malevolent touch by a prison guard gives rise to a federal cause of action."  *Id*. at 37 (quoting *Hudson*, 503 U.S. at 9).  Although inmates must show the application of nontrivial force, an Eighth Amendment violation can occur even if that force did not cause serious injury.  *Id*. at 38 ("[A]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.").

In the current case, Cruse alleges that, while handcuffed and thus posing no threat to the JCI officers, he was taken to "the shack" and beaten.  *See* ECF No. 1.  Defendants, for their part, deny that any beating occurred.  In support thereof, they provide only the decision of the

administrative law judge following the IGO referral to the OAH for resolution.[3]  *See* ECF Nos. 56, 56-1, 56-3, 56-4.  The Defendants could have, but failed to, provide any documentation maintained by the institution regarding this matter such as grievance forms, Matters of Record, incident reports, or camera footage.  Similarly, they did not provide affidavits from any Defendant or other witnesses.  Thus, this Court has not been able to review any of the evidence relied upon by the administrative law judge.  Instead, what the Court is left with is the decision by the ALJ finding that Cruse "failed to show, by a preponderance of the evidence, that he was beaten by DOC staff on September 23, 2021 . . ." (ECF No. 56-3 at 10).  However, the record before the Court also contains Cruse's verified opposition response maintaining that he was beaten by the JCI officers and injured as a result.  Further, Cruse puts forth his own record evidence, and identifies inconsistencies contained therein, including slightly conflicting accounts of why the officers took Cruse into the shack, outside the view of cameras, in the first place.

In light of the record before it, the Court finds summary judgment to be inappropriate.  The record advanced by the Correctional Defendants is sparse and fails to meet their burden of demonstrating that there are no genuine issues of material fact present in this case.  Where, as here, the Correctional Defendants deny there was an application of force, and Cruse maintains that force was applied, there exists a genuine dispute of material fact regarding whether the force was applied, and if it was, whether it was done maliciously.  The issue requires credibility determinations not appropriate for resolution on summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Accordingly, Defendants' Motion to Dismiss, or in the

---

[3] "After preliminary review [by the IGO], if the complaint is not found to be wholly lacking in merit on its face, the Office shall refer the complaint to the Office of Administrative Hearings."  Md. Code Ann., Corr. Servs. § 10-207 (West)

Alternative for Summary Judgment, construed as a Motion for Summary Judgement, is denied as to Defendants Sanni, Asuelimen, Abidogun, and Choutedjem.

### a. Qualified Immunity

The Correctional Defendants argue that they are entitled to qualified immunity. "Under our precedents, officers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *Dist. of Columbia v. Wesby*, 538 U.S. 48, 62-63 (2018) citing *Reichle v. Howards*, 566 U.S. 658, 664 (2012). "'Clearly established' means that, at the time of the officer's conduct, the law was 'sufficiently clear' that every 'reasonable official would understand that what he is doing' is unlawful." *Id.* at 63 (citing *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

However, this defense is unavailing here both because the constitutional right was well-established at the time of the incidents at issue and because there exists a material dispute of fact regarding whether the conduct allegedly violative of plaintiff's constitutional right actually occurred. *See Willingham v. Crooke*, 412 F.3d 553, 559 (4th Cir. 2005). While it is true that qualified immunity is ordinarily determined at the summary judgment stage of litigation, *see Wilson v. Kittoe*, 337 F.3d 392, 397 (4th Cir. 2003), the defense of "[q]ualified immunity does not, however, override the ordinary rules applicable to summary judgment proceedings." *Willingham*, 412 F.3d at 559, citing *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992). As noted, there are material facts in dispute in this case concerning whether defendants' use of force violated plaintiff's constitutional rights. Thus, Defendants Sanni, Asuelimen, Abidogun, and Choutedjem are not entitled to qualified immunity at this stage in the proceedings.

### b. Eleventh Amendment

The Correctional Defendants also raise the argument that, to the extent Cruse brought suit against them in their official capacities, the suit cannot proceed. ECF No. 56-1 at 13-14. In his opposition response, Cruse clarifies that he sues the Defendants in their individual capacities. ECF No. 60-2 at 1. The Eleventh Amendment to the Constitution immunizes state agencies and departments from citizen suits for damages in federal court. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). The Correctional Defendants are Maryland state employees. Suits against agents of the state for acts taken in their official capacities are equivalent to suing the state itself. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989). Accordingly, to the extent Cruse's Complaint could be construed to raise claims against the Correctional Defendants in their official capacities, those claims are barred by the Eleventh Amendment., *see Pennhurst*, 465 U.S. at 100–01, and will be dismissed with prejudice. Claims against Defendants Sanni, Asuelimen, Abidogun, and Choutedjem in their individual capacities are permitted to proceed.

## IV.    MISCELLANEOUS MOTIONS

Two miscellaneous motions are pending at this time: Cruse's Motion for Appointment of Counsel (ECF No. 61), and Cruse's "Motion Requesting Witnesses be Entered on Docket Fifth Request" (ECF No. 64). The Court will address each in turn.

As to Plaintiff's Motion to Appoint Counsel, a federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1),[4] is a discretionary one, and may be considered where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779 (4th Cir. 1975); *see also, Branch v. Cole*, 686 F.2d 264 (5th Cir. 1982). There is no absolute

---

[4] Under § 1915(e)(1), a Court of the United States may request an attorney to represent any person unable to afford counsel.

right to appointment of counsel; an indigent claimant must present "exceptional circumstances." *See Miller v. Simmons*, 814 F.2d 962, 966 (4th Cir. 1987). Exceptional circumstances exist where a "pro se litigant has a colorable claim but lacks the capacity to present it." *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by *Mallard v. U.S. Dist. Ct*., 490 U.S. 296, 298 (1989) (holding that 28 U.S.C. § 1915 does not authorize compulsory appointment of counsel). As the Correctional Defendants' Motion for Summary Judgment will be denied as to Defendants Sanni, Asuelimen, Abidogun, and Choutedjem, the Court will appoint counsel to represent Cruse and assist him with presenting his claims throughout the remainder of this action.

Finally, Cruse moves the Court to place witnesses on the docket. ECF No. 64. Because counsel will be appointed to assist Cruse from this point forward, the Motion is denied without prejudice. Cruse may consult with his counsel once appointed to determine the best strategy for pursuing his claims and presenting evidence when appropriate.

## V.   CONCLUSION

For the foregoing reasons, the Correctional Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment is granted in part, as to Defendants Frosh, Hill, and Harris, and denied in part as to Defendants Sanni, Asuelimen, Abidogun, and Choutedjem. Frosh, Hill, and Harris are dismissed from this action, and all claims against them are dismissed.

Plaintiff's Motion for Appointment of Counsel is granted. ECF No. 61. Plaintiff's "Motion Requesting Witnesses be Entered on Docket Fifth Request" is denied without prejudice. ECF No. 64. A separate Order follows.

Date:   July 22, 2024

_____/s/_____
Stephanie A. Gallagher
United States District Judge